**In the United States District Court
for the District of Kansas**

———————

Case No. 25-cv-2014-TC

———————

ERICKA CASTELLON,

*Plaintiff*

v.

TEXTRON AVIATION,

*Defendant*

———————

## MEMORANDUM AND ORDER

Plaintiff Ericka Castellon, proceeding pro se, sued Textron Aviation for employment discrimination. Doc. 54. Textron moves for summary judgment. Doc. 55. For the following reasons, that motion is granted and the other motions, Docs. 30 and 75, are denied as moot.

## I

### A

Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is necessary to resolve a claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016). Indeed, belaboring such disputes undermines the efficiency that Rule 56 seeks to promote. *Adler*, 144 F.3d at 670.

1

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(a)–(c). To determine whether a genuine dispute exists, the court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues as to those dispositive matters remain for trial. *Celotex*, 477 U.S. at 324; *Savant Homes*, 809 F.3d at 1137.

**B**

This is an employment discrimination case. Castellon contends that her former employer, Textron, failed to accommodate her disability, treated her differently than her coworkers because of her disability, and retaliated against her because of her disability. The following explains the context in which this lawsuit arose.

Castellon worked for Textron as a manufacturing engineer from April 2022 to June 2024. Doc. 54 at ¶¶ 2.a.i, 2.a.ii, 2.a.xii.[1] She analyzed product designs and collaborated with the engineering department to ensure airplanes were manufactured properly. *Id.* at ¶ 2.a.iii. Her supervisor was Casey Alexander. *Id.* at ¶ 2.a.v.

This dispute centers around Castellon's attempts to receive three workplace accommodations. She sought and was denied remote work, a standing desk, and a modified work schedule. The following facts provide a timeline detailing her efforts.

---

[1] All document citations are to the document and page number assigned in the CM/ECF system. All facts are uncontroverted unless otherwise specified.

In January 2023, Castellon requested to work from home because of migraines. Doc. 54 at ¶ 2.a.vii. She submitted a letter from her doctor noting that she would benefit from "[l]ower stimulation and lighting [and] decreased noise." *Id.* at ¶ 2.a.viii; Doc. 56-7. Castellon met with Alexander and Nam Phan-Schwader from Textron's human resources department. Doc. 56 at ¶¶ 12, 16. At that meeting, Phan-Schwader explained that Textron denied Castellon's request for three reasons: Her doctor's note did not say she needed to work remotely, her job had "on-the-floor support duties" that required work in-person, and she was too inexperienced to work without "daily one-on-one" assistance. *Id.* at ¶ 16. Alexander offered Castellon a different workspace with less noise and light, but Castellon rejected that offer. *Id.* at ¶¶ 16, 17. At that time, none of Castellon's manufacturing engineer colleagues worked remotely full time. *Id.* at ¶ 18.

Sometime after that meeting, Castellon requested a standing desk. Doc. 56 at ¶ 19. Alexander told Castellon that her current desk was a standing desk that could be raised by turning a hand crank. *Id.*; Doc. 56-3 at 13–14. But Castellon "never tried" to use the hand crank, Doc. 56-3 at 13, insisting that she could not do so because of her disability and that Textron needed to give her an electric standing desk. Doc. 56 at ¶ 19, Doc. 71 at ¶ 19, Doc. 56-3 at 13–14.

On June 5, 2023, Castellon went on medical leave. Doc. 54 at ¶ 2.a.x; Doc. 56 at ¶ 21. That leave lasted until July 10, 2023. Doc. 56 at ¶ 21. On July 11, her first day back at work, Castellon again requested to work from home. Doc. 56-11. She provided Textron letters from her doctors noting that she should work from home. Doc. 56-12.

Alexander, Phan-Schwader, and Kiersten Camp, Textron's health services manager, met with Castellon on July 26 to discuss her latest request. Doc. 56 at ¶ 22. Alexander explained that Castellon's role "was not compatible with work from home due to the need to be available to go out on the shop floor to trouble shoot issues . . . ." Doc. 56-13. He further explained that Castellon was having "difficulty with some of the work content . . . requiring close support from co-workers." *Id.* Castellon expressed frustration that Textron denied her request even though her doctors noted that she needed to work from home, but Camp explained that doctors' recommendations were considered "in relation to the essential functions of the job." *Id.* Camp again offered Castellon a different workspace: Castellon again declined. *Id.* Camp then told Castellon that she could take a leave of absence or look into

3

other positions that would allow for remote work. *Id.* Textron denied Castellon's request to work from home.

Castellon took leave pursuant to the Family and Medical Leave Act (FMLA) starting on August 2, 2023. Doc. 54 at ¶ 2.a.x. She received 100% of her salary for the first thirteen weeks of leave and 60% for the rest. *Id.* She returned to work in January 2024 after exhausting her FMLA leave. Doc. 56 at ¶ 25; Doc. 56-15.

At some time in early 2024, Mitch Mencacci, who was a manufacturing engineer manager, held a staff meeting with Castellon and her colleagues. Doc. 56 at ¶ 26. Mencacci discussed an upcoming merit bonus. *Id.* He explained that all employees were eligible for the merit bonus but that only those who met expectations would receive it. *Id.* Castellon subsequently had a meeting with Alexander wherein he explained that her performance did not meet expectations. *Id.* at ¶ 27; Doc. 56-18. Alexander explained that Castellon's performance was substandard in several ways. He stated that she needed to "improve her error identification," had "struggled to identify or implement problem solving techniques," and needed to "be present as necessary to support team objectives." Doc. 56-18 at 4, 6. Given her poor performance, Textron did not give her a merit bonus. Doc. 56 at ¶ 30. She was not alone—none of Castellon's colleagues who performed below expectations received a merit bonus. *Id.* at ¶ 32.

After she returned to work in January 2024, Castellon had poor attendance. Between January and June 2024, she called in sick eighteen times, took ten personal days, and left early twice. Doc. 56-19. She worked ten out of twenty working days in March, eight out of twenty-five in April, and nine out of nineteen in May. *Id.*

Alexander and Kari Moore from Textron's human resources department met with Castellon on May 14, 2024, to discuss her attendance. Doc. 56 at ¶ 36. Moore explained that Textron was worried Castellon would receive another poor review. Doc. 56-23 at 1. Castellon replied that she needed Alexander to be "flexible" and allow her to work from home. *Id.* Moore replied that Castellon's job responsibilities required physical presence and, even so, that she was not performing well enough to function independently at home. *Id.* Castellon then explained that she needed every Friday off work to go to doctor's appointments and that she needed to leave work at noon every Thursday to prepare for the drive to those appointments, which were in another

city.[2] *Id.* Alexander and Moore told Castellon that her attendance was unacceptably poor—she had missed almost 50% of the year—and offered her a 9/80 schedule. *Id.* at 2. That would allow her to work eighty hours in nine days, leaving her every other Friday off. Doc. 56-23 at 2. Castellon declined that offer. *Id.* Moore reiterated that Castellon's poor attendance was grounds for termination.[3] *Id.* at 3.

On June 4, Textron issued Castellon a Final Absenteeism Notice. Doc. 56 at ¶ 44. That document explained that Castellon's absences were unacceptable, that she would have to use vacation time for any future absences, that she had exhausted all her accrued and to-be-accrued vacation time for 2024, and that any further unapproved absences would result in termination. Doc. 56-26.

The next day, Castellon emailed Moore requesting to have the upcoming Friday, June 7, off work. Doc. 56-27 at 2. Moore did not approve the request. *Id.* Castellon replied that she would miss work anyway, and she did so. *Id.*; Doc. 56-19. Textron fired Castellon on June 10 due to excessive absenteeism. Doc. 56-30.

Based on these facts, Castellon, proceeding pro se, filed suit in federal court. Doc. 26. She brings three claims under the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101–12213. In Count I, she contends that Textron violated Section 12112 by failing to accommodate her to work remotely, to have a shorter workweek, and to have a standing desk. Doc. 54 at ¶ 4.a.i. In Count II, she alleges that Textron treated her differently on the basis of a disability in violation of Section 12112, specifically by firing her and not giving her a merit raise. *Id.* at ¶ 4.a.ii; Doc. 71 at 31. And finally in Count III, she contends that Textron retaliated against her in violation of Section 12203 based on her requests for reasonable accommodations. *Id.* at ¶ 4.a.iii.

Textron has two pending motions. In one, it moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim. Doc. 30.

---

[2] Castellon lived in Kansas City but worked in Wichita. Doc. 56-21 at 1.

[3] Castellon met with Textron leadership again on May 15 and May 30. Doc. 56 at ¶¶ 41, 43. The discussion at those meetings mimicked that of the May 14 meeting: Castellon's attendance was poor. Docs. 56-21, 56-23, 56-25.

In the other, it moves pursuant to Fed. R. Civ. P. 56 for summary judgment.[4] Doc. 55.

## II

Castellon asserts that her former employer, Textron, engaged in various forms of unlawful conduct attributable to her disability. But the summary judgment record fails to support her claims. Accordingly, Textron's motion for summary judgment is granted.[5]

## A

Castellon claims in Count I that Textron denied her requests for reasonable accommodations in violation of the ADAAA. Doc. 54 at ¶ 4.a.i. That claim is analyzed pursuant to a modified *McDonnell Douglas* framework. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018). The plaintiff must first make a prima facie case of failure to accommodate. *Id.* If he or she does so, the burden then shifts to the employer to present evidence that either conclusively rebuts the prima facie case or establishes an affirmative defense. *Id.*

### 1

To make a prima facie case of failure to accommodate, a plaintiff must demonstrate that she is disabled, she is otherwise qualified, and she requested a plausibly reasonable accommodation. *Lincoln*, 900 F.3d at 1204. Relevant here, the ADAAA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," and "being regarded as having such an impairment." 42 U.S.C. § 12102(1); *accord Spinelli v. Coherus Biosciences, Inc.*, 167 F.4th 1274, 1281 (10th Cir. 2026).

---

[4] This Memorandum and Order grants Textron's motion for summary judgment. As a result, the motion to dismiss, Doc. 30, is DENIED as moot.

[5] While its motion for summary judgment was pending, Textron filed a motion to amend its summary judgment brief. Doc. 75. That motion notes that Textron discovered new evidence that calls into question its argument regarding the timeliness of Castellon's claims. *See generally id.* That motion, Doc. 75, is DENIED as moot because Castellon's claims fail on the merits for reasons unrelated to timeliness. Nonetheless, counsel's candor is commended.

Castellon has not made a prima facie case of failure to accommodate. *Contra* Doc. 71 at 28. In particular, she has produced no evidence indicating that she is disabled.[6] Castellon argues that she has "multiple disabling conditions," Doc. 71 at 18, but there is no evidence in the record (or argument from Castellon) showing what those conditions are or how these allegedly disabling conditions impair a major life activity. At the summary judgment stage, she has a burden to support her claims with evidence. *See Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 652 (10th Cir. 2008) (noting that summary judgment requires the non-movant to "come forward with evidence"). And she has failed to do so. As a result, her claim fails as a matter of law. *See Spinelli*, F.4th at 1281 (affirming dismissal where the complaint said "nothing [ ] about [the plaintiff's] impairment and does not mention any major life activities," and noting that "*at a minimum* the complaint must identify a major life activity") (emphasis added); *Holt v. Grand Lake Mental Health Ctr., Inc.*, 443 F.3d 762, 766–67 (10th Cir. 2006) (affirming summary judgment where there was no showing of an impairment that substantially limits a major life activity).

**2**

Textron argues that even if Castellon had made a prima facie case of failure to accommodate, her claim still fails. Doc. 56 at 21. Specifically, Textron argues that Castellon's requests to work from home and to have a shorter work week were unreasonable, and it argues that it satisfied Castellon's request for a standing desk. *Id.* at 21, 22, 28.

The term "reasonable accommodation" refers to "those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job . . . ." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1051 (10th Cir. 2017) (emphasis omitted). In the context of working from home, the Tenth Circuit has noted that "[p]hysical attendance in the workplace is itself an essential function of most jobs, and an employee's request to work from home is, as a matter of law, unreasonable if the employer has decided that physical presence

---

[6] Castellon makes no argument that she is disabled because she has a record of, or because she is regarded as, having an impairment that substantially limits a major life activity. *See generally* Doc. 71. Because there is no evidence that Castellon had a record of such an impairment or that Textron regarded her as having such an impairment, only whether Castellon had such an impairment is considered.

at the workplace is an essential function of the position." *Id.* (citation and quotation marks omitted); *see also Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1124 (10th Cir. 2004) ("[A] request to work at home is unreasonable if it eliminates an essential function of the job . . . .").

The uncontroverted evidence establishes that Castellon's request to work from home was unreasonable. There is no dispute that in-person attendance was a substantial function of her job. Doc. 56 at ¶¶ 4, 16, 18, 22, 36, 37, 41. This is not surprising: "Most jobs in organizations public or private involve team work under supervision rather than solitary unsupervised work, and team work under supervision generally cannot be performed at home without a substantial reduction in the quality of the employee's performance." *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995); *accord Punt*, 862 F.3d at 1051 ("Physical attendance in the workplace is itself an essential function of most jobs.") (brackets omitted). And the evidence shows Textron did not want Castellon to work from home because she was both inexperienced and performing poorly. Doc. 56 at ¶ 16. Because the fully remote work that Castellon sought was not a reasonable accommodation, Textron is entitled to judgment as a matter of law. *See Brown v. Austin*, 13 F.4th 1079, 1087 (10th Cir. 2021) (affirming summary judgment where the plaintiff did not show that his requested accommodation was reasonable); *Unrein v. PHC-Fort Morgan, Inc.*, 993 F.3d 873, 878 (10th Cir. 2021) (same).

Castellon's request to have Fridays and Thursday afternoons off work was also unreasonable. It was an essential function of Castellon's job as a salaried employee to work forty hours each week. Doc. 56 at ¶¶ 37, 45, 46. Thus, her request to work three and a half days a week was unreasonable. *See Carter v. Pathfinder Energy Servs.*, 662 F.3d 1134, 1147 (10th Cir. 2011) (quoting *DeVito v. Chicago Park Dist.*, 270 F.3d 532, 534 (7th Cir. 2001)) (noting that "in the case of a full-time job, the essential functions of the job include the 'capability of working full-time'") (brackets omitted).

Castellon's counterarguments are unpersuasive. The only mention in her response regarding the reasonableness of her request to work from home is that Textron asked her to "seek work from home instructions from her doctor," and that such "inconsistencies" mean summary judgment is inappropriate. Doc 71 at 29. This argument is a *non sequitur.* Castellon does not explain how Textron's request for a doctor's note means that her requested accommodation was reasonable. And employers have the right to request medical information

under the ADAAA. *Rockefeller v. Abraham*, 23 F. App'x 893, 897 (10th Cir. 2001) (citing *Templeton v. Neodata Servs., Inc.,* 162 F.3d 617, 619 (10th Cir. 1998)). Had she presented such information, Textron could have reconsidered the request.

Her argument concerning her request for a shorter work week similarly fails. *Contra* Doc. 71 at 30. Castellon argues that Textron initially offered this accommodation but then abruptly reneged on that offer. *Id.* at 30. But there is no evidence in the record that Textron ever approved Castellon's request to have every Friday and Thursday afternoon off work. The evidence is to the contrary. Doc. 56-23.

Finally, Castellon asserts that Textron "failed to engage in the interactive process required by the ADA." Doc. 71 at 1; *see Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1194 n.2 (10th Cir. 2022) ("When an employer does not engage in the interactive process, that employer will unlikely be able to establish the absence of a disputed fact as to the existence of a reasonable accommodation."). That argument fails for two related reasons. First, she fails to identify any facts in support of that assertion. *See generally* Doc. 71. That omission is fatal. *See Regan-Touhy*, 526 F.3d at 652 (affirming summary judgment and noting that the plaintiff must "come forward with evidence . . . in her favor"). Second, the evidence is to the contrary. Textron offered Castellon various reasonable accommodations, including a 9/80 work schedule and a different workspace, and she rejected all of them. Doc. 56 at ¶¶ 16, 17, 19, 22, 36, 37. There is simply no argument that the ADAAA required Textron to do more. *See Selenke v. Med. Imaging of Colorado*, 248 F.3d 1249, 1263 (10th Cir. 2001) (affirming summary judgment where the employer provided various reasonable alternative accommodations).

Textron further argues that it satisfied Castellon's request for a standing desk. Doc. 56 at 26. Recall that Castellon had a standing desk and that when she requested one, Alexander made her aware of that fact. *Id.* at ¶ 19. Castellon concedes that Textron provided her with a standing desk, but she maintains that it did so "in a discriminatory way." Doc. 71 at 29.

Castellon's claim fails because there is no dispute that Textron provided her with a standing desk. Doc. 56 at ¶ 19. She argues that she needed an electric standing desk because her back pain made it "impossible" for her to operate the manual standing desk, but the evidence confirms she "never tried" to operate the standing desk. Doc. 56-3 at 13. That will not do. *Lee v. ABF Freight Sys., Inc.*, 22 F.3d 1019, 1022–

23 (10th Cir. 1994) (quoting *Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 146 (5th Cir. 1982)) (noting that when an employer offers a reasonable accommodation, the "employee has a correlative duty to make a good faith attempt to satisfy his needs through means offered by the employer"). She further argues that others at Textron had electric standing desks, Doc. 71 at 29–30, but she does not support that allegation with citations to the record. Nor does she explain why that means that her manual standing desk was inadequate—she has no evidence that she needed an electric standing desk due to a disability. Instead, it appears to be a subjective preference she had that Textron did not meet. But an employee is not entitled to the accommodation of her choice: "Any reasonable accommodation by the employer is sufficient to meet its accommodation obligation." *Tabura v. Kellogg USA*, 880 F.3d 544, 551 (10th Cir. 2018). Because Textron provided Castellon with a standing desk and there is no evidence it was inadequate to meet her requested accommodation, her claim fails. *See Selenke*, 248 F.3d at 1263 (affirming summary judgment where the defendant provided a reasonable accommodation, and noting that "the ADA requires an employer to provide a reasonable accommodation, not the accommodation the employee would prefer") (brackets and quotation marks omitted).

**B**

Castellon claims in Count II that Textron, based on her disability, treated her differently than it did her colleagues by not giving her a raise and by firing her. Doc. 54 at ¶ 4.a.ii; Doc. 71 at 31. Claims of disparate treatment are analyzed under the familiar *McDonnell Douglas* framework. *Lincoln*, 900 F.3d at 1191–92. First, the plaintiff must make a prima facie case. That requires showing that she is "disabled within the meaning of the ADA," that she is "qualified for the job held," and that she suffered discrimination "because of" her disability. *Id.*

Castellon has not made a prima facie case of disparate treatment. *Contra* Doc. 71 at 31. As noted *supra* § II.A.1, Castellon has not shown that she is disabled. She argues that she has "multiple disabling conditions," Doc. 71 at 33, without pointing to any evidence of the disability or showing how those conditions affect a major life activity. That is fatal to her claim. *See Holt*, 443 F.3d at 766–67 (affirming summary judgment where there was no showing of an impairment that substantially limits a major life activity).

Castellon has also failed to show that she was treated differently because of her disability. *Contra* Doc. 71 at 31. Her evidence is nothing

but subjective speculation and conjecture devoid of any factual support. *See id.* at 31–34. The record is clear that she had poor attendance and was fired because of it. Docs. 56 at ¶ 44 & 56-19; *see Brigham v. Frontier Airlines, Inc.*, 57 F.4th 1194, 1202 (10th Cir. 2023) (finding no prima facie case where the plaintiff lacked evidence of causation and the record was clear she was fired for absenteeism). And there is also no dispute that she did not receive a bonus because her performance was poor. Doc. 56 at ¶¶ 26, 30–32.

Castellon's counterarguments are unpersuasive. She argues that she was the only person who did not receive a bonus and that she was not trained to perform at the benchmarked goals that Textron used to rate her performance. Doc. 71 at 31–32. Once again, Castellon offers no evidence in support of these allegations. And the record is to the contrary. Doc. 56 at ¶¶ 16, 30–32. But even if she had evidence to support her argument, the alleged lack of training fails to suggest that she was terminated and denied a raise *because of* her alleged disability. *See Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 990 (10th Cir. 2021) (noting that the plaintiff must have "affirmative evidence that the disability was a determinative factor in [the employer's] decision"). The evidence confirms that Textron had issues with Castellon's substandard performance long before she received a review that was based on, allegedly, metrics on which she was not trained. Doc. 56 at ¶ 16.

Textron also argues that even assuming Castellon had made a prima facie case of disparate treatment, it had a legitimate non-pretextual reason for firing her and denying her a bonus. Doc. 56 at 34, 38. If a plaintiff meets her burden of stating a prima facie claim of disparate treatment, the burden shifts to the employer to provide a legitimate reason for its decision. *Lincoln*, 900 F.3d at 1193. The burden to establish a legitimate, nondiscriminatory reason is "exceedingly light." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017). On a motion for summary judgment, a defendant need only "articulate a reason for the [action] that is not, on its face, prohibited and that is reasonably specific and clear." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1058 (10th Cir. 2020) (quotations omitted). It "need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

Textron has met that burden. It asserts that it denied Castellon a raise for her poor performance and fired her for absenteeism. Doc. 56 at 34, 38. There is ample evidence to suggest that Castellon performed

poorly and was chronically absent. *Id.* at ¶¶ 16, 22, 27, 36; Doc. 56-19. Poor performance and absenteeism are legitimate reasons for adverse employment decisions. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005); *Frappied*, 966 F.3d at 1058. Castellon makes no argument to the contrary.

Once an employer satisfies its obligation to identify a lawful reason for the adverse employment decision, the burden returns to the employee to show that the reason was pretext for discrimination. *Lincoln*, 900 F.3d at 1193; *Kincaid*, 94 F.4th at 943. A plaintiff "may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision." *Lincoln*, 900 F.3d at 1193 (quoting *DePaula*, 859 F.3d at 970). In other words, a plaintiff may show that the defendant's reason is "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [it is] unworthy of belief." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1039 (10th Cir. 2011); *see also Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019).

Pretext probes the true intentions of the defendant, so the focus is limited to "whether the employer honestly believed its reasons and acted in good faith upon them." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007). A court's role "is to prevent intentional discriminatory . . . practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Dewitt v. S.W. Bell Tel. Co.*, 845 F.3d 1299, 1312 (10th Cir. 2017) (quoting *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006)). All facts are examined "as they appear *to the person making the decision*, not as they appear to the plaintiff." *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 655 (10th Cir. 2013) (citation and internal quotations omitted) (emphasis in original). Any doubts concerning pretext are resolved in the plaintiff's favor, but conjecture and bare allegations are not enough to show pretext. *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007).

Castellon makes two points in support of pretext. Doc. 71 at 31. Both fail.

*First*, Castellon argues that the merit bonus was not discretionary and that she was the only person who did not receive it. Doc. 71 at 31. That argument fails because the evidence confirms that the merit bonus, as its name suggests, was reserved only for employees whose performance justified a bonus. Doc. 56 at ¶¶ 26, 32. There is no dispute

that Castellon did not receive a bonus because of her poor performance. *Id.* at ¶ 30. And none of her colleagues who performed poorly received a bonus. *Id.* at ¶ 32.

Moreover, Castellon does not identify any similarly situated employees who received a bonus. *See Iweha v. State of Kansas*, 121 F.4th 1208, 1232 (10th Cir. 2024) ("One method by which a plaintiff can demonstrate an inference of discrimination is to show that the employer treated similarly situated employees more favorably."). Merely asserting that Castellon was the only employee who did not receive a bonus without pointing to similarly situated employees who *did* receive a bonus does not give rise to an inference of pretext. *See id.* (finding no pretext where comparators and plaintiff were not similarly situated).

*Second*, Castellon takes issue with her poor performance. She argues, as noted earlier, that she was classified as a poor performer because she was not trained on the benchmarks that Textron used to evaluate her. Doc. 71 at 32. But there is no evidence that Castellon's performance was measured through metrics on which she was not trained. And there is no dispute that Alexander considered Castellon to be a poor performer well before she received her evaluation. Doc. 56 at ¶ 16. In any event, even if Textron was incorrect about Castellon's poor performance, that would not establish pretext. *See Dewitt*, F.3d at 1311 (noting that "when an employee is discharged because of an employer's honest mistake, federal anti-discrimination laws offer no protection").

## C

Castellon argues in Count III that Textron retaliated against her by firing her because she requested accommodations. Doc. 54 at ¶ 4.a.iii; Doc. 71 at 34. Again, the standard *McDonnell-Douglas* burden-shifting regime applies. *Lincoln*, 900 F.3d at 1209. Textron argues that, even assuming Castellon made a prima facie case of retaliation, it had a legitimate reason for terminating her: absenteeism. Doc. 56 at 38. Absenteeism is a legitimate, non-discriminatory reason for termination, *Frappied*, 966 F.3d at 1058, and Castellon does not argue otherwise.

To survive summary judgment, Castellon must therefore demonstrate that Textron's explanation is pretext. *Estate of Bassatt v. Sch. Dist. No. 1*, 775 F.3d 1233, 1238 (10th Cir. 2014). She fails to do so. *See* Doc. 71 at 34–36. At best, she takes issue with comments that Kari Moore, who worked for Textron's human resources department, made about

Castellon. Castellon alleges that Moore said Castellon was not a good fit for the company and that Moore would ensure Castellon would not get another job at Textron. Doc. 71 at 33. She also alleges Moore laughed at the idea that Castellon would win if she "[took] the company to default." *Id.* at 15 ¶ 71. Castellon argues that these comments show Textron's reasons for her termination were pretextual. *Id.*

Castellon's argument fails. The focus of the pretext inquiry is on whether the employer honestly believed its reasons and acted in good faith upon them. *Riggs*, 497 F.3d at 1119. And, even assuming Moore made these comments (and they could be described as evincing animosity towards Castellon) they do not suggest Textron was motivated by anything other than Castellon's poor performance.

### III

For the foregoing reasons, Textron's Motion for Summary Judgment, Doc. 55, is GRANTED, its Motion to Dismiss, Doc. 30, is DENIED AS MOOT, and its Motion to Amend, Doc. 75, is DENIED AS MOOT.

It is so ordered.

Date: June 26, 2026          ___s/ Toby Crouse_____
                              Toby Crouse
                              United States District Judge

14